UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
FEB 2 7 2020
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Criminal No. 20-cr-00031-ABJ |
| : | |
| **JULIEN RICHARDSON,** : | |
| : | |
| Defendant. : | |

### STATEMENT OF THE OFFENSE AND RELEVANT CONDUCT

### I. THE ELEMENTS OF THE OFFENSE

The essential elements of the offense of Conspiracy To Launder Monetary Instruments, in violation of Title 18, United States Code, Section 1956(h), each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

(1) that two or more people agreed to try to accomplish a common and unlawful plan to violate Title 18, United States Code, Sections 1956 or 1957; and

(2) that the defendant intentionally joined in that agreement.

The elements of a violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), are:

(1) that the defendant knowingly conducted or tried to conduct a financial transaction;

(2) that the defendant knew the property involved in the transaction was the proceeds of some kind of unlawful activity;

(3) that the money or property did come from a specified unlawful activity, including wire fraud; and

(4) that the defendant knew the transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or the control of the proceeds.

JR
2/27/2020

DEO.
2/27/2020

The elements of Engaging in Monetary Transaction in Property Derived from Specified Unlawful Activity, in violation of Title 18, United States Code, Section 1957, are:

(1) that the defendant knowingly engaged or attempted to engage in a monetary transaction;

(2) that the defendant knew the transaction involved property or funds that were the proceeds of some criminal activity;

(3) that the property had a value of more than $10,000; and

(4) that the property was in fact the proceeds of a specified unlawful activity, including wire fraud.

## II. FACTUAL BASIS

Had this case proceeded to trial, the government would have proved the following facts beyond a reasonable doubt:

1. From at least in or before April 2016, continuing through at least on or about February 2, 2018, within the District of Columbia and elsewhere, Julien RICHARDSON (the "DEFENDANT") together with co-conspirators, including CO-CONSPIRATOR 1, did knowingly conspire, combine, confederate, and agree with each other to launder the proceeds of a number of wire fraud schemes.

2. The DEFENDANT used numerous false aliases and shell corporate entities using forged identification cards in furtherance of the conspiracy, including aliases in the names of Francisco Mulato and Ryan Williams and corporate entities in the names of SKMulato Realty LLC and FMulato Apps, LLC. The DEFENDANT used these false aliases, forged identification cards, and shell corporate entities to establish bank accounts that were used to receive and launder fraud proceeds.

2

3. CO-CONSPIRATOR 1 created and used numerous false aliases and shell corporate entities using forged identification cards in furtherance of the conspiracy, including an alias in the name of Sean King and the same corporate entities as the DEFENDANT. CO-CONSPIRATOR 1 used this false alias, forged identification cards, and shell corporate entities to establish bank accounts that were used to receive and launder fraud proceeds.

4. SKMulato Realty LLC and FMulato Apps, LLC are shell companies that did not engage in any legitimate business and were used by CO-CONSPIRATOR 1, and the DEFENDANT for the purpose of receiving and laundering criminal proceeds.

5. Individuals who were perpetrating various fraud schemes (hereinafter a "Connection" or "Connections") caused incoming wire transfers from the fraud scheme that the Connection was perpetrating, into the bank accounts utilized by the DEFENDANT and CO-CONSPIRATOR 1, including into the bank accounts in the names of SKMulato Realty LLC or FMulato Apps, LLC, or an alias. The DEFENDANT and CO-CONSPIRATOR 1 would meet to discuss withdrawing the fraud proceeds from the bank accounts. Once the DEFENDANT and CO-CONPSIRATOR 1 completed the withdrawal of the fraud proceeds from a particular account, they would take their collective fee which they split evenly, 50/50. The remaining of the fraud proceeds would be sent to the Connection through Western Union or some other method.

## FRAUD PROCEEDS LAUNDERED BY
## THE DEFENDANT AND CO-CONSPIRATOR 1

6. In order to receive and launder the proceeds of fraud schemes perpetrated by their Connections, the DEFENDANT and CO-CONSPIRATOR 1 opened a number of bank accounts in the names of their false aliases and shell entities, including bank accounts at HSBC, Bank of America, TD Bank, and Citibank. During the course of the conspiracy, upon receipt of funds into the accounts that they had set up, the DEFENDANT and CO-CONSPIRATOR 1 would launder

the proceeds through cash withdrawals, checks issued to their fake identities, intrabank transfers to other accounts they controlled, and postal money orders. Once the proceeds had been extracted from their various accounts, CO-CONSPIRATOR 1 or another individual, would send the proceeds to the Connection.

7.      In particular, on or about August 30, 2016, the DEFENDANT, using the alias Francisco Mulato, and CO-CONSPIRATOR 1, using the alias Sean King, opened a Citibank bank account ending in 6456, in the name of the shell entity SKMulato Realty LLC. On or about November 27, 2017, this account received a wire transfer for $72,000 which was the proceeds of a fraud scheme that had been perpetrated on Victim 9, a limited liability company based in Washington, D.C. The wire transfer from Victim 9 to Citibank Account 6456, was sent from an employee of Victim 9 who was located in Washington, D.C. at the time that he initiated the transfer. Between November 29, 2017 and November 30, 2017, the Defendant and CO-CONSPIRATOR 1 laundered the proceeds of this wire through, among other methods, a cash withdrawal, postal money order and intra bank transfer, knowing that these funds were derived from a fraud scheme.

8.      During the scheme, the DEFENDANT engaged in intrabank transfers to other accounts controlled by him or CO-CONSPIRATOR 1 in amounts in excess of $10,000, in order to launder the fraud proceeds.

9.      In addition, on or about March 6, 2017, the DEFENDANT and CO-CONSPIRATOR 1 withdrew $25,000 in the form of a cashier's check from their Citibank Account ending in 6456, that they opened using the shell entity SKMulato Realty LLC. The DEFENDANT and CO-CONSPIRATOR 1 subsequently deposited that cashier's check into the DEFENDANT's HSBC Bank Account which he opened using the fake alias Ryan Williams. The $25,000 was part

4

of a $50,000 wire transfer into Citibank account 6456, from Victim 6, who was the victim of a fraud scheme.

**SUMMARY**

10. As stated in the preceding paragraphs, the DEFENDANT knowingly received and conspired with CO-CONSPIRATOR 1, to receive the proceeds of various wire fraud schemes into bank accounts under the control of the DEFENDANT or CO-CONSPIRATOR 1, totaling at least approximately $629,662.00. Following the receipt of the above-mentioned fraud proceeds, the DEFENDANT and CO-CONSPIRATOR 1 knowingly conducted and attempted to conduct transactions to launder the proceeds from the bank accounts, including cash withdrawals, personal checks, postal money orders, cashier's checks, and intra-bank transfers. The purpose of these transactions was to conceal the nature, location, source, ownership or control of the fraud proceeds.

11. The DEFENDANT and CO-CONSPIRATOR 1 knew that each of the incoming wire transfers was the result of a fraud scheme being perpetrated by a Connection and that their role was to launder the proceeds from the fraud scheme, provide the Connection with its share of the fraud proceeds, and then split the remaining evenly amongst themselves.

12. Some of the transactions and attempted transactions involving fraud proceeds were in amounts greater than $10,000.

13. The DEFENDANT personally obtained at least $62,966.20 in fraud proceeds that were successfully deposited into accounts under the DEFENDANT or CO-CONSPIRATOR 1's dominion and control.

14. Bank of America, Citibank, TD Bank, and HSBC are each financial institutions, the deposits of which are insured by the Federal Deposit Insurance Corporation.

15. The defendant admits that the proceeds he personally obtained as a result of the conspiracy described above have been dissipated by him and cannot be located upon the exercise

of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed beyond the jurisdiction of the Court.

16. The DEFENDANT waives any challenge to venue in the District of Columbia.

17. The facts contained herein are not complete in all details. Instead, they are provided in order to demonstrate that the elements of the charged offense have been met for purposes of a plea in this case. These are not all of the facts known to the Defendant and to the government.

Respectfully submitted,

Timothy J. Shea
United States Attorney

BY: _____
Anthony Saler
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6971
Anthony.Saler@usdoj.gov

6

JR
2/27/2020

WPC
2/27/2020

**Defendant's Acceptance**

    I have read this Statement of the Offense and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Statement of the Offense and all matters relating to it. I fully understand this Statement of the Offense and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully. No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above.

Date: 2/27/2020

Julien Richardson
Defendant

**Defense Counsel's Acknowledgment**

    I have reviewed every part of this Statement of the Offense with my client. It accurately and completely sets forth the Statement of the Offense agreed to by the defendant and the Office of the United States Attorney for the District of Columbia.

Date: 2/27/2020

Dwight Crawley
Attorney for Defendant